## JOHN U. PERKINS VS. W. W. COLEMAN.

1. CHANCERY PRACTICE: *Setoff.*

    As a general rule, courts of equity do not entertain the subject of setoff in respect to unconnected demand, unless some other peculiar equity has intervened so as to raise a presumption that it was understood by the parties that one should liquidate or set off the other.

2. SAME: *Statute of limitations.*

    P. was indebted to C. in the sum of $3,000 secured by deed in trust on lands; shortly after the deed was executed, P. loaned to C. $1,500 in gold, for which C. agreed to pay on demand $2,100 in currency. P. never called for it, but paid a part on his note until he thought his note on C. would set off the remainder, due by him to C. on the note secured. *Held,* that C. is bound in equity and conscience to allow this credit, notwithstanding the statute of limitations would have otherwise formed a bar upon the note.

3. SAME: *Compound interest.*

    It is a well established doctrine, that if the interest is past due, it may be compounded and carried into a new contract. But a promise to pay compound interest for future forbearance, does not come within the rule.

APPEAL from the Chancery Court of *Winston* County.

Hon. THEODORIC C. LYON, Chancellor.

Appellee purchased of appellant a tract of land, executed two notes, one for $3,500, the other for $875 ; afterwards consolidated the notes, and gave a deed in trust on lands to secure their payment. While thus indebted, he loaned to appellant $1,500 in gold, to be paid in $2,100 "greenbacks" in Mobile when called on. The appellee never called for the $2,100, but paid a portion of the note secured by the deed in trust. The note for the $2,100 was barred by the statute of six years, appellee refused to allow it as an offset, and had the lands of appellants advertised for sale un-

der the deed in trust. Appellant filed his bill enjoining the sale, setting up these facts and claiming the setoff. To this bill a demurrer was filed setting up statute of limitations and sustained by the court, and an appeal taken.

*Frank & Johnston*, for appellant:

Equity will enjoin the enforcement of usurious contracts. Hooker *v.* Austin, 41 Miss., 717. A proviso in a contract that interest shall bear interest is void. 2 Salk., 449. Upon the construction in a similar case it was held that interest cannot be recovered. W,aring *v.* Cunliffe, 1 Ves. Jr., 99. Upon a note payable at a number of years with interest payable annually, it was held that simple interest only could be collected, and that on the principal sum. Hastings *v.* Wiswall, 8 Mass., 455; Doe *v.* Warren, 7 Greenleaf, 48. An original contract that interest shall bear interest is not valid. 6 Johns. Ch., 314; 4 Randolph, 406; Rodes *v.* Blythe, 2 B. Mon., 336; 3 Pars. on Cont., 152. Is the cross demand of Coleman barred by the statute of limitations? It was contracted at or near the time when the deed in trust was created, and it cannot be termed a state demand. Under the special circumstances of this case, it can be set off in equity against the claim of Coleman. The claim is not barred at law. The statute did not commence running until a demand had been made for payment, and the demand has never been made. See Sawyer *v.* Tappan, 14 N. H., 352. As to mutual understanding between the parties, see Angell on Lim., § 149. "Courts of equity will extend the doctrine of setoff * * beyond the law in all cases where the peculiar equities intervene between the parties." Story Eq. Jur., § 1436. See 5 Cushm., 423.

*Jarnigan & Rives*, for appellees:

A bill in equity must state a case that comes within the equity jurisdiction, and if it fails, the error is fatal, and no consent can confer jurisdiction. Story's Eq. Pl., 10. The court will not assume jurisdiction. Id., 473, and id., 34. Courts of equity do not act upon the subject of setoff in respect to distinct and unconnected debts, unless some peculiar reason for equity interference

has intervened. 2 How. (U. S.), 383; 3 Mon., 375; 1 id., 191; 5 Day, 223; 1 Paige, 218; 2 id., 406. The obligation, or writing given by Coleman to Perkins, was dated September, 1866. It was a promise to pay on demand, and was done at the date thereof. Angell on Lim., § 95; 15 Mass., 193; 9 Pick., 448; 9 Barr (Penn.), 410; 15 Pet., 233; 8 How., 210; 4 Wash., 631.

Contracts may be made for periodical rests in the payment of interest, and to turn any unpaid interest, due at such time, into principal, and agreements to pay interest annually and to add unpaid interest to the principal for a new principal for the next year, are valid, and not usurious in their character. Story on Cont., § 596; 2 Pars. on Cont., 423; 3 id., 122, 126, 150–3; 39 Miss., 516; 1 Stewart (Ala.), 347; 5 Cranch, 229; 4 Dall., 373; 13 How. (U. S.), 429; Cooley's Const. Lim., 361, 375; 5 Ind., 535; 19 id., 68; 15 N. Y., 227–230. A party seeking equity against usurious contracts, must offer to do equity. Brown v. Swann, 10 Pet., 497; id., 521; 1 Paige, 429; 3 Pars. on Cont., 126.

SIMRALL, J., delivered the opinion of the court.

In 1865, Perkins purchased from Coleman, a tract of land and other property, and agreed to pay therefor $3,500 at twelve months after date, and $875 January 1, 1867. Shortly after this transaction, Perkins loaned to Coleman $1,500 in gold, to be paid in $2,100 in currency, at Mobile, when called for; this loan was dated September 29, 1866.

October 27, 1866, another arrangement was consummated by the parties, by which Perkins' two notes were consolidated into one for $4,169.12, payable twenty-six months after date, with 10 per cent. per annum, interest to be compounded annually. This note was secured by conveying to Hanna, Trustee, sundry parcels of land, with power of sale on nonpayment of the note, at the request of Coleman. When this note and security were made, the debt of Coleman to Perkins was not considered or taken into the account. Coleman has never paid the money loaned to him; pay-

ments were made by Perkins on his indebtedness in 1869 and 1872, amounting in the aggregate to $3,237.05. The trustee was about executing the trust by a sale of the property, when Perkins filed his bill for injunction, seeking that the indebtedness of Coleman to him on account of the loan in 1866, may be applied as a payment or setoff as a cross demand, and credited to him, on the trust debt, and also, that there shall be excluded from the computation, compound interest on his note to Coleman. A demurrer was sustained to the amended bill, and it was dismissed.

Two grounds of relief are set up in the bill. First, the cross demand. The general rule is, that courts of equity do not entertain the subject of setoff in respect to distinct and unconnected demands, unless some other peculiar equity has intervened. As where a mutual credit has been given by each upon the footing of a debt by the other, so that a presumption might arise, that it is understood by the parties, that one should go in liquidation or setoff of the other. Dade v. Irwin, Ex'r, 2 How. (S. C.), 390, 391.

If there be mutual credit and indebtedness, and an express agreement to set off the debts against each other, equity would give effect to the agreement, though the parties were remediless at law. 2 Story Eq. Jur., § 1436.

To admit the offset, there must be some extraneous matter necessary to the attainment of justice. Beall v. Squires & Sylliman, 3 Monr., 375.

The next inquiry is, whether there are allegations in the bill of such circumstances, as make the allowance of the setoff necessary to the attainment of justice. The complainant gives this account of the loan made to Coleman. He had purchased of him sundry parcels of land upon which there was a wool factory. Having the $1,500 of gold on hand, he loaned it to Coleman, to be returned in its equivalent in currency in Mobile on call, intending to make the call, if he should need it in his business; not requiring the money, he suffered it to remain with Coleman, intending to use it in payment on final settlement with him. On

this point, the complainant makes his statement, viz: "If complainant did not call for the money, he would be credited with it in final settlement; made no call on defendant for the money, but treated it as a payment or cross demand against defendant's debt, and defendant had abundant reason to believe that complainant was acting upon it in that light; lately, within the last year, defendant has manifested a disposition to repudiate the debt, and thus defraud him."

When the loan was made, September 29, 1866, Perkins was indebted to Coleman over $3,000 for the purchase of property. The writing is peculiar in its terms, but in agreement with the motives as stated by Perkins. "Received of J. W. Perkins, fifteen hundred dollars in gold ($1,500), for which I agree to pay, in Mobile, twenty-one hundred dollars in greenbacks, or United States currency, when called for. (Signed), W. W. COLEMAN."

No rate of interest is specified, nor is it payable on a day certain, or on demand, but when "called for." Perkins gives reasonable explanation why he did not call for it; not needing it in the exigencies of business, it was left with Coleman, to be accounted for on settlement.

Coleman could put no other interpretation than that upon the forbearance to call for the money. But among the causes of demurrer, it is assigned that this debt is stale, and barred by the statute of limitations; the bar attaches to an offset, which is a cross demand, generally, as it would if the defendant had brought an original suit upon it. But there are exceptions resting in manifest reason and justice; thus in Shattuck v. Shattuck, 16 N. H., 242, the action was on a memorandum for so much money to be accounted for on settlement. The defendant may offset any balance due him from the plaintiff at the date of the memorandum. So in a suit on a bond, the defense of payment by board and lodging, furnished the obligee on an agreement, so to be applied, was sustained, although most of the account was barred. King, Adm'r, v. King, 1 Stock. (N. J.), 44. In the course of the opinion, it was said, the credit, or setoff, will be allowed, "if there is an

express agreement in circumstances from which the court can infer such an understanding." If such inference may be deduced, then, although the defendant remains passive, the plaintiff will not be allowed to apply the statute to such counter demand.

The origin of the mutual indebtedness was almost contemporaneous.

Within a month after Perkins made the loan to Coleman, he renewed his notes, with deed in trust, giving a long extension of time, but upon hard terms. Perkins, from time to time, makes payments, until he supposed his loan to Coleman would cover the balance due. In the meantime, six years have elapsed since the loan to Coleman, and now he presses for this balance, and repudiates his debt to Perkins, who has been deluded with the belief that when they made final settlement, his debt would be good. We are induced to the conclusion, from all the circumstances narrated by the complainant, that Coleman is bound in equity and conscience to allow this credit. If Perkins fails to obtain the set-off in this suit, he loses his claim altogether; that was a distinct circumstance alluded to in Graves & White v. Hull, 27 Miss., 423. It is there said that "if, from the nature of the claim or situation of the parties, justice cannot be done at law, chancery will allow a setoff in a case not within the statute."

The writing evidencing the loan by Perkins, does not indicate that the parties intended an immediate payment, or a payment at any definite time. It was a loan to be returned when called for, conveying the idea that Perkins should give specific notice to Coleman to return the money. Coleman might well conclude, that until called for, he had a right to retain the money.

The other question is, whether Coleman shall be allowed compound interest as stipulated for. It is quite well settled that such a contract is not usurious.

In Waring v. Cunliffe, 1 Vesey Jr., 99, Lord THURLOW, referring to the practice of the court, said : " He was in the constant habit of thinking that interest ought not to carry interest.   *   *   Chancery will not allow compound interest, unless where there

has been a settlement of the account between the parties after the interest has become due, or there has been an agreement subsequent to the original contract."

After a review of the cases, KENT, Chancellor, in Connecticut *v.* Jackson, 1 Johns. Ch., 15, 16, recognizes that to be the doctrine; also Stokely *v.* Thompson, 34 Penn. St., 213; Mowry *v.* Bishop, 5 Paige, 102–3; Wilcox *v.* Howland, 23 Pick., 168–9. The reason assigned by Chancellor KENT (*supra*) for the rule is, " that interest upon interest promptly and incessantly accruing would be harsh and oppressive; common business cannot sustain such overwhelming accumulation." An action will lie to recover an installment of interest, although the principal is not due; but whether interest can be recovered on such installment, the cases are not agreed. See 1 Am. Lead. Cases, 341, 371, note; 3 Parsons Con., 152. But the agreement of Perkins was not to pay interest annually upon the debt, but that the interest should be compounded; that is, made part of the principal, so as to carry interest. The doctrine, so far as well established, is that if the interest is past due, it may be compounded and carried into a new contract; but this was a promise to pay compound interest for future forbearance, which does not come within the rule. Coleman is not entitled to compound interest.

The complainant alleges that he is willing that if anything shall be due the defendant, to pay it, and offers so to do; but insists that upon a just settlement he owes nothing.

We think there is equity in the bill upon both grounds. The decree of the chancellor is reversed, and judgment here overruling the demurrer and remanding the cause, with leave to the defendant to answer in forty days from this date.